PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CROFTON VENTURES LIMITED
PARTNERSHIP,
              *Plaintiff-Appellant,*

              v.

G&H PARTNERSHIP; HARRY RATRIE;
E. STEWART MITCHELL,
INCORPORATED; DAHLIA RATRIE,                    No. 00-1517
              *Defendants-Appellees,*

              and

JOHN C. CYPHERS; N. W. GREENWALD
CONCRETE COMPANY; NORMAN
GREENWALD, JR.,
              *Defendants.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CA-96-1378-MJG)

Argued: March 2, 2001

Decided: July 24, 2001

Before NIEMEYER, MICHAEL, and KING, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded for further proceed-
ings by published opinion. Judge Niemeyer wrote the opinion, in
which Judge King joined. Judge Michael wrote an opinion dissenting
in part and concurring in part.

---

**COUNSEL**

**ARGUED:** Holly Drumheller Butler, Steven Keith Fedder, PIPER, MARBURY, RUDNICK & WOLFE, L.L.P., Baltimore, Maryland, for Appellant. Thomas M. Downs, SWIDLER, BERLIN, SHEREFF, FRIEDMAN, L.L.P., Washington, D.C.; Thomas Mark Lingan, VENABLE, BAETJER & HOWARD, L.L.P., Baltimore, Maryland, for Appellees. **ON BRIEF:** John Chen, Kathleen L. Nooney, PIPER, MARBURY, RUDNICK & WOLFE, Chicago, Illinois, for Appellant. Laura A. Ford, SWIDLER, BERLIN, SHEREFF, FRIEDMAN, L.L.P., Washington, D.C.; Geoffrey R. Garinther, VENABLE, BAETJER & HOWARD, L.L.P., Baltimore, Maryland, for Appellees.

---

**OPINION**

NIEMEYER, Circuit Judge:

After purchasing a 32-acre parcel of land in Anne Arundel County, Maryland, Crofton Ventures Limited Partnership ("Crofton") discovered that a portion of the parcel had been used as a hazardous waste dump. After reporting its discovery to the Maryland Department of the Environment and cleaning up the site, it brought this action under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, against former owners and operators of the land to recover its response costs. In addition to its CERCLA claim, Crofton asserted common law claims for fraudulent misrepresentation and breach of contract. Following a bench trial, the district court entered judgment for the defendants on all counts. Because we conclude, however, that the district court erroneously construed the requirements of CERCLA, we vacate its ruling on that claim and remand. We affirm the court's remaining rulings.

I

On April 9, 1987, Crofton[1] entered into a contract with G & H Part-

---

[1]The contract of sale was actually signed by C & H Properties, a partnership, but before closing, it assigned its interest in the property to Crofton, which took title to the property on February 27, 1991.

nership, of which Harry and Dahlia Ratrie were partners, (collectively hereinafter, "Ratrie"), to purchase a parcel of land to be carved from Ratrie's 55-acre tract located on Patuxent River Road in Anne Arundel County, Maryland. Crofton intended to develop the site for operation of a vehicle salvage business involving the storing and selling of motor vehicles that had been declared a total loss. As part of the contract of sale, which the parties amended from time to time, Ratrie represented:

> To the best of Seller's knowledge and while the [property] was in Seller's possession, the [property] has not been used for hazardous waste disposal, and no party has transported, caused to be transported, stored or caused to be stored on the [property], in any buildings, containers, on the surface or underground, any solid, liquid, semi-solid or gaseous materials that would constitute "hazardous wastes" . . . "hazardous substances" . . . "oil, petroleum products, and their by-products" . . . or any substance the presence of which on the [property] is prohibited or regulated by any law similar to those set forth in this section and that the [property] has not been contaminated by any of the aforementioned hazardous or toxic wastes or substances[.]"

In 1991, before closing, Ratrie subdivided the 55-acre tract and, at closing, conveyed a 32-acre parcel to Crofton pursuant to the April 1987 contract. When Crofton began to develop the site in 1995, it discovered a waste dump on the site that contained a total of 285 fully or partially buried 55-gallon drums, truck tires, household appliances, and other similar refuse. Upon testing five of the drums, Crofton found that four contained a mixture of asphalt and trichloroethylene ("TCE"), a common solvent known to be carcinogenic and constituting a hazardous substance under federal and state environmental laws. Crofton reported its finding to the Maryland Department of the Environment and, thereafter, under the Department's supervision, cleaned up the site.

In the process of cleaning up the site, Crofton found a few corrugated drums of World War II vintage. The remainder of the drums, however, were of a type manufactured during the period "in [the] late '70s through the '80s and to today." They were discovered in a broad

array of disrepair, described variously as "rusted," "crushed," "split open," "leaking," and "broken." Two hundred forty-six of these drums contained observable asphalt, and most smelled of TCE. Two sets of 10 drums containing asphalt were sampled and tested to determine whether they contained hazardous substances, and the tests from each of the two composite samples indicated high concentrations of TCE. "High levels" of TCE were also found in the soil and groundwater at the site.

After cleaning up the site, Crofton commenced this action under CERCLA to recover all or part of its cleanup costs. It also alleged state common law counts for fraudulent misrepresentation and breach of warranty.

The evidence at trial established that the 55-acre tract had been used from the 1930s to 1977 by its owner Alan E. Barton and various tenants for the production of hot-mix asphalt, ready-mix concrete, and sand and gravel. After Barton's death, the tract was conveyed to E. Stewart Mitchell, Inc. ("Mitchell"), a Maryland corporation, which owned it until 1985. Mitchell operated an asphalt plant on the tract during the early part of that period — from 1977-1980 — and thereafter sold the business to Ratrie, leasing to him the property with an option to purchase. In 1985, Ratrie exercised the option and bought the tract from Mitchell. Ratrie subsequently leased it to an operator who continued to produce asphalt on the tract. Both Mitchell and Ratrie concede that, as defined by CERCLA, they were owners during the relevant periods, 1977-85 and 1985-1991, respectively, and that Mitchell was an operator from 1977-1980.

The evidence in the record indicates that TCE was used at the site beginning in 1979, when Mitchell began using TCE in testing hot-mix asphalt as required by the State of Maryland. In 1980, when Mitchell ceased operating the plant and leased the property to Ratrie, Ratrie continued to produce asphalt at the site and test it in the same manner. From 1979 until the late 1980s, waste material from asphalt testing on the site — consisting of a mixture of liquid asphalt, aggregates, and TCE — was placed in 55-gallon drums of the type found at the site by Crofton. No evidence could be uncovered, however, as to how Mitchell or Ratrie, or indeed the State of Maryland, disposed of those

waste-filled drums. Mitchell retained no records of the drums' disposition, and no witness recalled how the drums were disposed of.

Upon Crofton's purchase of the site in 1991, no further operations were conducted there, and it remained unused until Crofton began its development of the property in 1995, at which time Crofton discovered the hazardous waste.

Following a four-day bench trial, the district court made findings of fact, upon which it entered judgment dismissing all of the claims with prejudice, concluding generally that Crofton had failed to meet its burden of proof on each of the three counts. On Crofton's CERCLA claim, the district court found that hazardous wastes had been released on the site, causing Crofton to incur response costs. It concluded, however, that the evidence failed to establish that either Mitchell or Ratrie "placed any TCE on the Site." The court observed that if Crofton "could so prove, [Mitchell] would be a responsible person from 1981 to 1985 and [Ratrie] would be a responsible person starting in 1985." The district court acknowledged that prior to 1995, when Crofton discovered the partially buried drums, "one or more persons . . . placed TCE on the Site." But the court stated that the dispositive question was "whether [Crofton] has proven that some, if not all, of the drums containing TCE were placed on the Site by the [defendants] from 1977 on." And it repeated that statement of the issue in its discussion: "The question before this Court is whether the Court can find, by a preponderance of the evidence, that the [defendants] dumped their TCE waste on the Site." The court then summarized its findings, concluding that Crofton "has presented no *direct* evidence of dumping by the [defendants], the alleged perpetrators." (Emphasis added). Acknowledging that Crofton could also satisfy its burden through circumstantial evidence, the court concluded that the circumstantial evidence was likewise insufficient:

> [Crofton] has, at most, presented evidence to raise a mere suspicion that the [defendants] (or one of them) *might* be responsible for placing some drums containing TCE at *some* improper location. [Crofton] has not proven by a preponderance of the evidence that the [defendants] placed any TCE on the Site.

On the fraud claim, the court found that Crofton failed to prove that Ratrie knew that hazardous waste was buried on the property when he represented in the contract of sale that it was not. And on the breach of contract claim based on Ratrie's express warranty that "to the best of [his] knowledge," the site had not been used for waste disposal, the court likewise found that Ratrie did not have knowledge of any hazardous waste disposal and therefore did not breach that express warranty.

Crofton filed this appeal, which challenges the legal and factual bases for the court's findings on the CERCLA claim and the factual bases for its findings on the state common law claims.

II

Crofton brought its CERCLA claim for contribution under 42 U.S.C. § 9613(f), which authorizes a suit in contribution against "any other person who is liable or potentially liable under section 9607(a)" for response costs. It asserts that Mitchell and Ratrie are liable under § 9607(a) for response costs because they were owners or operators of a site during the time when hazardous waste was "disposed of" at the site. They argue that under CERCLA, the term "disposed of" is a term of art that results in liability for defendants if they owned or operated the property at a time that the TCE was actually placed on the site or when TCE leaked into the soil at the site. Crofton contends that the district court erred in requiring it to prove that the *defendants* "dumped their TCE waste on the Site" during the period that they were owners or operators. It also contends that the district court clearly erred in making factual findings about the size and location of the area in which the 55-gallon drums were found, the date when the drums were buried, and the source of the drums containing the TCE waste.

We address Crofton's argument by first looking at the nature of its claim under CERCLA and the elements that Crofton must prove. CERCLA was enacted to address "the increasing environmental and health problems associated with inactive hazardous waste sites. The statute encourages private cleanup of such hazards by providing a cause of action for recovery of costs incurred in responding to a 'release' of hazardous substances at any 'facility.'" *Nurad, Inc. v.*

*William E. Hooper & Sons*, 966 F.2d 837, 841 (4th Cir. 1992). The Act imposes broad and strict liability for the costs of cleaning up hazardous waste sites without regard to whether the persons assigned liability under the Act placed the waste material on the site or had knowledge of the waste materials' presence. *See United States v. Monsanto Co.*, 858 F.2d 160, 168 (4th Cir. 1988); *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1042 (2d Cir. 1985).

Section 9607(a), which defines the scope of liability, provides that in connection with a facility "from which there is a release, or threatened release which causes the incurrence of response costs, of a hazardous substance," four classes of persons are liable for the response costs, two of which are relevant here:

> (1) the owner and operator of a vessel or a facility, [and]

> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of.

42 U.S.C. § 9607(a)(1), (2).[2] Subsection (a)(1) thus imposes liability

---

[2]The relevant portions of 42 U.S.C. § 9607(a) provide:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section —

>> (1) the owner and operator of a vessel or a facility,

>> (2) any persons who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

>> * * *

> from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for —

>> * * *

>> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan.

on *current* owners and operators of a facility, such as Crofton, and subsection (a)(2) imposes liability on any *previous* owners or operators of the facility if they were owners or operators *at the time of "disposal."* "Disposal" is defined broadly to include the "discharge," "leaking," or "placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment." 42 U.S.C. § 9601(29) (incorporating definition from 42 U.S.C. § 6903(3)). Thus, under subsection (a)(2), any owner or operator is liable if he was an owner or operator at the time when hazardous waste was *either* placed on the site *or* leaked into the environment from a source on the site, whether or not such owner or operator was the cause of the disposal or, indeed, even had knowledge of it. *See Monsanto*, 858 F.2d at 168 (holding that under 42 U.S.C. § 9607(a)(2), ownership of a facility at the time when hazardous substances were deposited is sufficient to trigger liability regardless of the owners' degree of participation in the disposal); *Shore Realty*, 759 F.2d at 1044 ("Prior owners and operators are liable only if they owned or operated the facility 'at the time of disposal of any hazardous substance'").

In sum, to recover contribution under CERCLA for response costs, as authorized by 42 U.S.C. § 9613(f), a plaintiff must establish: (1) that it incurred costs as a person liable under § 9607(a) in the response to a "release" or "threatened release"; (2) that the response was "consistent with the national contingency plan"; (3) that the defendant was a person liable for response costs under § 9607(a)(1)-(4); (4) that the defendant, if asserted to be a person covered by subsection (a)(2), as Crofton asserts in this case, was an owner or operator of a facility or site at the time that the hazardous waste was dumped at the site or when it leaked into the environment there; and (5) that the costs incurred by the plaintiff were "necessary" to the response. Necessary costs are defined to include interest. Once a

---

\* \* \*

The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D).

\* \* \*

plaintiff proves these elements, the defendant may avoid liability only by proving an affirmative defense provided in § 9607(b).

In this case, the district court found that Crofton incurred costs in response to a release as a person liable under 9607(a)(1). It did not, however, decide whether the response was consistent with the national contingency plan because it concluded that Crofton failed to prove that the defendants were persons liable for the response costs under § 9607(a)(2). Accordingly, we must determine whether, when the correct legal standard is applied, Crofton could recover under CERCLA. Reduced to the context of the evidence presented, we must determine whether, during the period when Mitchell or Ratrie owned or operated the site in question, evidence was sufficient to show that TCE was dumped at the site or that TCE leaked from the drums at the site into the environment. We believe there is ample evidence to establish both bases of liability in this case and that the district court overlooked this evidence because it misconstrued the requirements for establishing liability under CERCLA.[3]

(Text continued on page 11)

---

[3]Contrary to the suggestion of our dissenting colleague, a review of the complete record does not disclose that Crofton advanced a new theory of liability for the first time at the end of closing argument. The "bombshell" that counsel for Crofton "dropped" was their advice to the district court that the court was reading CERCLA too narrowly, failing to recognize that "disposal" includes "leaking." *See* 42 U.S.C. § 9601(29). And while counsel acknowledged that their attempt to prove the defendants' actual dumping would present a stronger case for Crofton, they argued that Crofton could meet its burden of establishing liability under CERCLA simply by showing that hazardous wastes "leaked" into the land while owned by the defendant. But this was not a new theory; it was rather a lesser included burden of proof.

Crofton stated its theory of liability in its complaint, alleging as one basis of CERCLA liability as to all of the defendants that each was either an owner or operator "of the Property at the time hazardous substances were released and disposed of on the Property." It also alleged that some of the defendants actually dumped hazardous wastes on the site.

When counsel sought, during closing argument, to argue strict liability based solely on ownership, the court directed counsel to argue how Crofton had proved actual dumping by the defendants. The court stated that Crofton had "to prove precisely who was the responsible person." When

counsel for Crofton branded as immaterial the ownership of the property and its operation by Ratrie and Mitchell, the court said, "I am afraid we are going to get unfocused . . . we are jumbling it together." Counsel for Crofton stated:

> Well, the problem with separating it, and I understand the Court's concern is that there is liability because of ownership and owner liability because of operation, and for the period between the early 1980 to 1985 Mitchell owned and Ratrie operated and so by its nature it jumbles.

The court then redirected the argument, "No, it doesn't jumble because of the first question from a factual point of view, who put the TCE there and then we'll worry who owned the property."

After the parties conceded that TCE had been dumped at the site, the court stated, "what's material is what was there, there was some TCE there, and we are trying to find out who put it there." As counsel for Crofton attempted to demonstrate its proof of actual disposal through circumstantial evidence, the court rejected the evidence as inadequate and stated, "[T]he sugar fairy didn't put it there. Somebody put it there, and it wasn't [Crofton]." As his final statement on the issue to the court, counsel for Crofton argued,

> The proposition we are now talking about is whether TCE containing drums were put on the dump site between '77 and '88 with, I guess an understanding, my understanding that the evidence is that there was no — once the still came in — but I don't think that is important.

In a subsequent exchange with counsel for Mitchell, the court reaffirmed its limited interpretation of CERCLA, as follows:

> The court:    But it would be reasonable to surmise, again at least 50, 60 drums had TCE based on that. What's the difference if it was one drum. The point is, did you put it there?

> Counsel for Mitchell:    There is no evidence that we put it there.

> The court:    That is the whole point. That is why we are here.

As its last point, counsel for Crofton argued more specifically that the law does not require "active disposal" but permits liability upon the establishment of "passive disposal." Counsel for Crofton stated:

The uncontroverted evidence shows that TCE was routinely used at the site beginning in 1979. Indeed, there is no evidence that it had been used at the site prior to that date. TCE was used to test asphalt at the site by Mitchell, by Ratrie, or by the State of Maryland, but, for purposes of establishing liability, it is immaterial who conducted the testing or used the TCE at the site. The uncontroverted evidence also established that a waste mixture of asphalt and TCE was, during the period from 1979 through the late 1980s, placed in 55-gallon drums at the site. Despite efforts to discover the fate of these drums, however, none of the owners or operators can account for what happened to the drums, and all records relating to this issue have somehow become unavailable. But the drums found at the site, filled with a mixture of asphalt and TCE, were of a type that were manufactured in the late 1970s and 1980s, and not before. When the drums were found in 1995, they were in a state of gross disrepair, evidencing a long period during which their contents were leaking into the environ-

> Section 107 focuses liability not only for active involvement in dumping or placing of hazardous waste facility but for the ownership of the facility at the time hazardous waste was spilling or leaking.

Believing this to be a new theory, the court asked why the parties went into the issue of who disposed of the drums and why hadn't counsel for Crofton mentioned this theory before. Counsel for Crofton said that it gave notice of its theory in the complaint.

The "bombshell" to which my dissenting colleague refers was bringing the realization to the court that the statute's definition of "disposal" was broader than active dumping and included leaking. The court's misperception of the statute's scope was clearly revealed much earlier when the court stated to the parties that Crofton itself was not a responsible party under CERCLA. "[I]f you are telling me that [Crofton] gets any responsibility in this world for those drums being there, then you are crazy." Yet, counsel for Crofton conceded that as owner of the property it had liability, a prerequisite to seeking contribution. Indeed, counsel for Ratrie agreed, arguing, "Mr. Horisk [of Crofton] testified that he understands that he is a liable party or potentially responsible party under CERCLA as an owner of the property."

Thus, any unfairness resulted from the limited interpretation of CERCLA, not from a change of theory.

ment at the site. Finally, the evidence was uncontroverted that TCE was found in the soil and in the groundwater at the site.

We believe that these facts, which are relevant to the appropriate legal standard for liability under the Act, would easily permit a fact-finder to conclude either (1) that TCE was placed on the site after 1977 or (2) that during the period after 1977, whether the drums were placed on the site before or after 1977, the drums' contents, including TCE, began to leak into the environment at the site and continuously leaked into the environment until cleaned up. Either conclusion would support liability of an owner or operator of the site from 1977 until 1995. It is irrelevant under the Act that Crofton could not prove who actually dumped the TCE at the site or whether any owner or operator had knowledge of the dumping or leaking during the relevant period. As we have pointed out, liability under the Act is strict and does not require that either of these elements be shown. *See Nurad*, 966 F.2d at 841.

The district court appears to have assumed otherwise, erroneously adding elements for establishing liability under the Act by requiring Crofton to show that the defendants themselves actively dumped the TCE at the site or otherwise were involved in the dumping. And relat-edly, the court erroneously construed the term "disposal," as used in the Act, too narrowly. The court repeatedly used language in its opin-ion suggesting that it limited "disposal" to active conduct of the defendants. Thus, the district court said that "[t]o establish the CER-CLA claims, Plaintiff must prove that [the *defendants*] placed TCE on the site." (Emphasis added). After discussing Crofton's claim, the court stated that "the case turns on whether the Plaintiff can prove if, and when, the *operators* of the asphalt plant on the . . . Site . . . *dumped* TCE on the Site." (Emphasis added). The court again stated, after concluding that someone placed TCE on the site prior to 1995, that "the question before the Court is whether the Plaintiff has proven that some . . . of the drums containing TCE were placed on the Site *by the [defendants]* from 1979 on." (Emphasis added). In concluding that Crofton did not make the showing demanded by the court, the court stated that Crofton "has not proven by a preponderance of the evidence that the [*defendants*] . . . *placed* any TCE on the Site." The court then repeated the issue as it understood it: "The question before this Court is whether the Court can find, by a preponderance of the

evidence, that the [*defendants*] *dumped their* TCE wastes on the Site."
(Emphasis added). The district court did not appear to countenance
the possibility that the drums were buried on the site at the behest of
some unknown third party, although there is evidence in the record
supporting precisely such a possibility. Of course, given the court's
apparent belief that a conclusion that a third party was responsible for
dumping of TCE would have been insufficient to impose liability
upon the defendants, it is understandable that the court failed to take
this possibility into account when it analyzed the evidence.

The district court thus made two legal errors. First, it believed that
liability could not attach under § 9607(a) unless Crofton showed that
the *defendants placed* or *dumped* TCE on the site. Second, the district
court apparently believed that the defendants could not be liable for
Crofton's response costs absent evidence linking the TCE used by the
defendants and the TCE that was buried in the drums at the site.
These legal assumptions overlooked the strict liability imposed by the
Act for any owner or operator of land at which hazardous waste is in
fact leaking into the environment. While "disposal" includes activities
such as "dumping," it also encompasses "spilling" and "leaking . . .
of any . . . hazardous waste into or on any land or water so that such
. . . hazardous waste . . . may enter the environment." 42 U.S.C.
§ 9601(29) (incorporating the definition from 42 U.S.C. § 6903(3)).
Given the breadth of the statutory definition of "disposal," the district
court must be able to conclude that the buried drums did not leak
between 1977 and 1991, regardless of when they were buried, to
make a finding that the owners and operators during that period were
not liable under § 9607(a)(2).

Because the district court did not reach other elements of liability
and did not address the defendants' affirmative defenses asserted
under 42 U.S.C. § 9607(b), we vacate the court's ruling on the CER-
CLA count and remand for further proceedings.

III

Crofton's challenge to the district court's factual findings on its
common law claims are based on the district court's findings of fact
that the defendants did not have knowledge of the existence of the
hazardous waste at the site. We have reviewed the record carefully

and do not find the district court's factual findings in this regard clearly erroneous. Accordingly, we affirm the district court's rulings with respect to Crofton's claims for fraudulent misrepresentation and breach of contract.

*AFFIRMED IN PART, VACATED IN PART,*

*AND REMANDED FOR FURTHER PROCEEDINGS*

MICHAEL, Circuit Judge, dissenting in part and concurring in part:

In a four-day trial that was fair to both sides, the defendants successfully defended the case Crofton asserted against them, which included a CERCLA claim that they dumped drums contaminated with TCE on a parcel of land in Anne Arundel County, Maryland. The majority nevertheless concludes that a remand of the CERCLA claim is necessary because the district judge did not understand the bases of liability under the Act and therefore failed to assess the evidence properly in making his factual findings. I respectfully disagree. While the evidence was being presented at trial, Crofton's theory was that the defendants dumped the TCE-filled drums on the site during the time they owned or operated it. During closing arguments, however, Crofton attempted to raise a new theory of liability based on passive disposal, that is, the leaking of TCE. I agree with the district judge's refusal to indulge this belated change in theory because of the prejudice to the defendants, who had defended a different case. In focusing on the case that was actually tried, the judge concluded that Crofton failed to prove by a preponderance of the evidence that contaminated drums were placed on the site during the time the defendants were responsible. This finding was not clearly erroneous. I would therefore affirm the judgment in favor of the defendants.

I.

The remand ordered by the majority gives Crofton the chance to have its case reconsidered under a new (and perhaps less burdensome) theory, that TCE leaked from the drums during the time that the defendants owned or operated the site. This is fundamentally unfair because Crofton waived the passive disposal theory of liability by failing to raise it until closing argument in a five-day trial.

In an extended closing argument session, Crofton's lawyers spent most of their time trying to convince the district judge that the defendants were responsible for dumping the drums found at the site. Then, at the very end, one of Crofton's lawyers said, "I want to take a step back . . . and kind of drop a bomb shell on this Court." He explained that he wanted to include the passive disposal (or leaking) theory of liability in his argument. The defendants' lawyer objected to the introduction of this theory, saying that Crofton had not based its case on passive disposal. The defense pointed out, for example, that there had been "[n]o discovery about passive disposal. . . . If there had been, we would have had lots of testimony on it." The district judge, who was immediately concerned because the defendants had no notice of the passive disposal theory, said:

> It is a little bit strange here, this [passive disposal] concept for the first time in final argument. Why did we go through four days of testimony without hearing about it? I don't understand. . . . Why didn't you mention this before? . . . It would [be] nice if they [defendants] knew what they were trying — if they really knew they were going to try that issue.

The judge nevertheless allowed Crofton's lawyer to attempt to identify evidence of leaking. In the end, however, the judge returned to the notice problem:

> I cannot believe in final argument you are going to be able to change this case from what everybody tried it to something that nobody tried. . . . I am sorry. It is absolutely not the slightest notice that this [passive disposal] was going to be tried. . . . It is not an additional argument. It is a totally different case than what they [defendants] thought they were trying. You look at the pretrial order. You don't see the slightest reference to this. . . . I got to tell you I didn't have to listen to all that stuff I heard for the last three years. It is a totally different case. Secondly, it wasn't even raised in argument with regard to liability; so let's proceed. I cannot allow you to amend the pleadings and do this at this time. This is unconsci[o]nable; unconsci[o]nable. Unconsci[o]nable. I can't do it.

It was thus clear to the trial judge that leaking was never an issue in the case. The record supports the judge's understanding. The passive disposal theory did not surface in discovery or in any other pretrial proceeding. And most important, at trial Crofton did not indicate during opening argument or at any other time before the close of evidence that it intended to base liability on leaking.

I agree with the majority that a number of events or acts can constitute "disposal" for purposes of CERCLA liability. This, however, does not excuse a plaintiff from giving a defendant notice of the particular theory or theories of disposal being pressed in a given case.[1] CERCLA provides that "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of" is liable for cleanup costs and other damages. 42 U.S.C. § 9607(a)(2). The term "disposal" means:

> the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment

---

[1] I respectfully disagree with the majority's assertion that the "bombshell" Crofton "dropped" in closing argument did not signal a new theory but rather was "advice to the district court that the court was reading CERCLA too narrowly." *Ante* at 9 n.3. Crofton was advancing a new theory, and the district judge did not misunderstand the law. As the judge recognized, "If any of the liquid leaks out, any of the TCE leaked out of the drum before [Crofton] moved it, that there would have been passive disposal." Thus, he did not read CERCLA too narrowly. The judge's ultimate rejection of the passive disposal or leaking theory rested on Crofton's delay in introducing the specific theory. In response to the judge's inquiry about why Crofton had never before mentioned leaking, its lawyer said only that the complaint, which used the general statutory term "disposed of," was sufficient. The general language in the complaint, however, did not excuse Crofton from giving the defendants and the court reasonable notice as to which of the several statutory definitions of "disposal" it was basing its case upon. Leaking is not a "lesser included burden of proof," as the majority suggests, *ante* at 9 n.3, but a separate ground for liability. It might be easier to prove leaking than dumping in some cases, but the defendant is still entitled to know whether the plaintiff's theory of the case includes leaking.

or be emitted into the air or discharged into any waters, including ground waters.

42 U.S.C. § 6903(3). Different cases present different grounds for disposal liability. Not every case involves facts suggesting both active disposal (for example, dumping or placing) and passive disposal (for example, leaking or spilling). *See, e.g., Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp.*, 976 F.2d 1338, 1342 & n.7 (9th Cir. 1992) (declining to consider the question of passive migration because plaintiff alleged active disposal, specifically, that defendant excavated contaminated soil and spread it over a clean part of the property); *Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837, 844-46 (4th Cir. 1992) (holding individual defendant liable because hazardous substances were leaking from tanks during the time that he owned the property, even though he did not handle the tanks). Crofton chose to frame and try its case as one involving active disposal only. The defendants responded accordingly. They did not pursue discovery on the issue of leaking, nor did they present evidence at trial to rebut a theory of leaking. This was not an oversight by the defendants, who legitimately believed that they were only facing a charge of active disposal. Crofton should not be permitted to argue now that this is a passive disposal case requiring only a showing that the TCE leaked into the environment during the time of the defendants' ownership or operation. Indeed, it is unprecedented to allow Crofton to make such a prejudicial change in its theory — in its own words, to "drop a bomb shell" — at this late stage. *See, e.g., Savarin Corp. v. Nat'l Bank of Pak.*, 447 F.2d 727, 732 (2d Cir. 1971). The district judge was correct to conclude that Crofton waived the passive disposal theory of liability.

Moreover, the district judge was correct in his observation (during closing argument) that there was insufficient evidence to establish that TCE leaked from the drums during the time the defendants would have been responsible. Crofton points to the drum log and groundwater test results for evidence of leaking. *See* Br. of Appellant at 26; Reply Br. of Appellant at 6. The drum log describes drums in various states of damage or deterioration, including crushed, split, or leaking. The log, however, revealed only what was seen. The log was not based on any scientific analysis. Furthermore, because the log was prepared at the time of the cleanup in 1995, it does not address

whether any leakage occurred earlier when the defendants owned or operated the site. The groundwater test results do show TCE contamination, but the testing was conducted after the drums had been removed. Tr. 328-29. The expert reports indicate that Crofton had not done any soil or groundwater sampling before the cleanup. *See* Expert Report of Bruce Monteith, Pl.'s Ex. 35-A, at 6-7; Expert Report of Joseph P. Lewandowski, Def. G&H's Ex. 39, at 5, 10. In addition, the groundwater test results are irrelevant to the issue of leaking. That evidence was introduced for the sole purpose of proving that the drum removal complied with the National Contingency Plan (NCP), an issue that the district judge never reached. Before Crofton's expert testified as to the groundwater test results, the judge ruled that the evidence could only be used to prove compliance with the NCP. Tr. 327, 329-30. All of this reveals that even if the issue of leaking is considered, the evidence, as the district judge recognized, is not sufficient to establish that the defendants are liable for passive disposal.

II.

It is beside the point to say, as the majority does, that the facts presented by Crofton "easily permit a factfinder to conclude" that TCE was placed on the site when defendants owned or operated it. *Ante* at 12. The record reveals that the district judge understood the bases of liability under CERCLA and that he made factual findings that were keyed to the case presented and the liability standards spelled out in the Act. We review factual findings for clear error. *See* Fed. R. Civ. P. 52(a) ("Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."). The district court's factual findings are not clearly erroneous.

The majority contends that the district judge erred because he required "Crofton to show that the defendants themselves actively dumped the TCE at the site or otherwise were involved in the dumping." *Ante* at 12. Although the district judge focused on whether Crofton proved that the defendants dumped the TCE on the site, this does not mean that the judge misunderstood the law. The judge was merely analyzing the case according to Crofton's theory, specifically, that the defendants had produced the TCE and then illegally dumped it on another part of their property after 1977. *See* R. vol. 9 at 51 (closing

argument by Crofton's lawyer) ("We believe [the drums] all came from the asphalt plant that was constructed by Mr. Mitchell in 1977 . . . .").[2] Based on the case that Crofton presented, the judge framed the "central question" as "whether Plaintiff has proved the alleged dumping in the post 1976 period." J.A. 826. *See also* J.A. 825 n.14 ("[A]s discussed herein, the Court concludes that Plaintiff has failed to prove that there was any TCE dumping on the Site after 1977 . . . ."). The judge rejected some of the evidence because it did not shed light on when the dumping occurred. *See* J.A. 833 ("[I]t would be more likely that drum dumping took place prior to 1977, while the dump site area was denuded from strip mining, rather than later, close to 1984, after the vegetation had regrown."); J.A. 834 ("The presence of [the fully corrugated] drums indicates that the dumping (at least of

---

[2]The trial judge's comments that the majority includes in its footnote 3 did not result from any "limited interpretation of CERCLA." *Ante* at 11 n.3. Rather, they were made in reference to Crofton's theory that the defendants themselves placed the contaminated drums on the site. *See* R. vol. 9 at 7 (closing argument by Crofton's lawyer) ("[M]y argument it would be what's in the drums, who put them there, who knew about it and who cleaned it up."); R. vol. 9 at 93-94 (judge's statement during closing argument) ("[Crofton's lawyer] just went through a long list which said it is evidence from which I should find that you [defendants] put it there."). Notwithstanding Crofton's theory, the judge recognized that Crofton could prove an active disposal case by showing that some person, not just the defendants, placed the contaminated drums on the site while the defendants owned or operated it. As a result, the judge focused his analysis on the timing of the dumping. *See, e.g.*, R. vol. 9 at 11 ("Why don't we start with the proof that it was put there between '77 and '88 . . . .").

According to the majority, the judge's comment that Crofton had no "responsibility" reveals the "court's misperception of the statute's scope." *Ante* at 11 n.3. The majority, I believe, has misconstrued the judge's statement. It is true that as the current landowner Crofton is liable for cleanup costs under CERCLA. 42 U.S.C. § 9607(a)(1). But the judge was not referring to this technical statutory meaning. Instead, he was using the ordinary meaning of "responsibility." *See* R. vol. 9 at 4-5 ("[Crofton] is innocent as I use the term. That may not be precisely the right word when you get down to it."). In fact, the judge's ruling against Crofton even though he considered Crofton "innocent" shows that the judge understood CERCLA's strict liability scheme.

these drums) took place a long, long time ago."); J.A. 835 ("[I]t would have been simple, yet potentially significant, to have preserved evidence of . . . the vintage of the tires.").

In a 31-page opinion the district judge explained in detail why he concluded that Crofton did not prove its active disposal case by a preponderance of the evidence. The first problem was "the absence of reliable proof of the location and size of the dump site." One of Crofton's assertions was that before 1977 heavy vegetation surrounding the dump site prevented trucks from driving to the site and unloading the drums, but that by 1984 the area was cleared and easily accessible. This, according to Crofton, allowed the inference that the drum dumping took place after 1977. But there was confusion in Crofton's case about the location of the site. Crofton's expert on aerial photographs placed the dump site at a location on the 1984 aerial photograph that was different from the location he identified on the 1968 and 1977 photographs. *See* R. vol. 8, ex. 3B-3D. Because of this confusion, the judge concluded that Crofton's "argument [that the dumping took place after 1977] based upon the alleged progressive changes in the dump site [from heavily vegetated to cleared] totally lacked an evidentiary foundation." The second problem was that much of the evidence that would have established the timing of the dumping either was not fully analyzed or was lost during the cleanup process. Crofton failed to present an expert analysis on the degradation of the drums and failed to specify how many drums were fully corrugated (in use in the 1930s and 1940s) and how many were semi-corrugated (in use later). Crofton likewise did not preserve evidence removed from the dump site that would have shed light on when the dump site was in use. This evidence included tires, mud flaps, road signs, and junked household appliances. The final problem was that Crofton's evidence regarding the defendants' involvement in the dumping was too speculative. The deposition of a former employee of the defendants supported Crofton's case, but the judge considered the employee's testimony unreliable because the defendants had fired him after he was caught stealing. The judge concluded that the remaining evidence created no more than a suspicion that the defendants dumped their TCE waste at the site. Crofton has not pointed to any record evidence that would fill the gaps in proof that the district judge identified.

Not once in part II does the majority mention the clearly erroneous standard of review, nor does it apply that standard. It is not enough

to say, as the majority does, that a factfinder could conclude that TCE was placed on the site while the defendants owned or operated it. This is not the standard that governs our review. The district judge, who heard four days of testimony and studied almost one hundred exhibits, found that Crofton did not prove a case of active disposal. After reviewing the evidence and giving "due regard . . . to the opportunity of the trial court to judge of the credibility of the witnesses," I am firmly convinced that the district judge did not commit clear error in finding that Crofton did not prove its case. Fed. R. Civ. P. 52(a). *See also Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985).

### III.

This appeal at the core is not about CERCLA. It is about whether the defendants won according to rules governing the trial of a lawsuit and any appeal from the judgment. These rules are that a defendant is entitled to fair notice of the plaintiff's theory of liability at trial and that findings of fact are reviewed on appeal for clear error. Because the defendants won the case according to these rules, the majority's remand of the CERCLA claim is simply wrong. I therefore respectfully dissent from parts I and II of the majority opinion, which govern the remand. I concur in part III, which affirms the judgment in favor of the defendants on Crofton's common law claims.